SECOND NATIONAL BANK, APPELLEE, v. SNOQUALMIE TRUST COMPANY, APPELLANT.

FILED MARCH 5, 1909.   No. 15,508.

1. Notes: BONA FIDE PURCHASERS. Defendant's board of directors, by resolution, authorized the execution of the corporation's note to D., its president. The note was prepared and signed in the corporation name by the secretary alone and delivered to D. The instrument did not indicate that D. was interested in, or an officer of, defendant. D. secured said note by misrepresentations and could not have recovered thereon. The contents of defendant's articles of incorporation were not disclosed, and but two sections of its by-laws were introduced in evidence, and they do not specifically authorize any officer or officers of the corporation to execute its promissory note. Before maturity, in due course of trade, for value and without notice, other than the face of the instrument would import, plaintiff purchased said note in

good faith from D.'s indorsee. *Held*, ·That it was 'not void in plaintiff's hands.

2. ———: ———. "An indorsee of a negotiable instrument, who takes it before maturity in part payment of a preexisting debt, and credits it thereon, is a purchaser for value in the due course of business." *Smith v. Thompson*, 67 Neb. 527.

3. **Trial:** DIRECTING VERDICT. The evidence is undisputed that plaintiff purchased the note in suit in good faith, in due course of trade, before its maturity, for a valuable consideration, and without notice of any infirmities therein. *Held*, That the court properly instructed the jury to return a verdict for plaintiff.

APPEAL from the district court for Lancaster county: LINCOLN FROST, JUDGE. *Affirmed.*

*M. F. Harrington, T. J. Doyle* and *G. L. De Lacy*, for appellant.

*Burkett, Wilson & Brown, contra.* ·

ROOT, J.

Action by the indorsee of a promissory note. The district court directed a verdict for plaintiff, and defendant appeals.

1. Prior to 1905 defendant was organized as a corporation under the laws of Arizona. Its articles of incorporation were not introduced in evidence, but the secretary testified that it was formed for the purpose of financing a mining enterprise whose property was situated in Washington. L. M. Disney was interested in, and vice-president of, the mining company, and president of defendant. T. J. Doyle was secretary of the trust company, which maintained offices in Lincoln, Nebraska. Disney had made a claim against defendant for salary or commissions for something he had, or claimed to have, done in its interests, and also offered to sell it certain stock of the mining company that was in fact owned by defendant. April 13, 1905, the defendant's board of directors passed the following resolution: "It was moved and carried that the proposition of L. M. Disney to sell this company

6,000 shares of mining stock for fifteen hundred dollars, he releasing all claim for salary, except expenses, and charges prior to January 1, 1905, be accepted, that he be paid five hundred dollars, and the remainder of one thousand dollars be paid him July 1, 1905, and that a note be given for the same bearing interest at the rate of six per cent." Thereupon the instrument in suit was executed. It is as follows: "$1,000. Lincoln, Neb., April 14, 1905. On or before July 1 after date we promise to pay to the order of L. M. Disney one thousand and no-100 dollars, at Lincoln, Neb. (Signed) Snoqualmie Trust Co., By T. J. Doyle, Sec." Defendant's seal was stamped upon the writing. This instrument was transferred by indorsement. to the payee's wife, and by her sold and indorsed to plaintiff on the 19th of April, 1905. The mining stock trans ferred by Disney as aforesaid actually belonged to the corporation, so that, independent of the release of Disney's claim for salary or commission, there was no consideration for the instrument, and it was procured by the misrepresentation of the payee. Defendant alleged that under the laws of Arizona and of Nebraska, and by virtue of its articles of incorporation and by-laws, its president only, or, in case of his disability, the vice-president, had authority to execute said note; that the note had never been executed by it and was not its obligation; that the impression of defendant's seal thereon was a forgery imprinted by said Disney after the instrument was signed, and constituted a material change thereof. That plaintiff had notice of the facts and was not an innocent purchaser. Mr. Disney's testimony was not offered.

2. Neither the laws of Arizona nor defendant's articles of incorporation were introduced in evidence, and but two sections of its by-laws, those relating to the duties of the president and secretary. Neither officer is in terms authorized to execute promissory notes on defendant's account or in its name. The president is vested with power to sign warrants on the treasurer for the payment of money, to sign deeds of conveyance, and to discharge such

other duties as are ordinarily and usually performed by the president of a private corporation. The secretary is made the custodian of the corporate seal. So far as the record discloses, none of the officers, nor all combined, were specifically authorized to execute a negotiable instrument in its name. However, the power to contract necessarily involves the power to create a debt, and, as said by Mr. Justice Gordon in *Watt's Appeal*, 78 Pa. St. 370, 391: "A corporation, without such power 'would be a body without life, utterly effete and worthless." *Richmond, F. & P. R. Co. v. Snead & Smith*, 19 Grat. (Va.) 354, 100 Am. Dec. 670. And the record being silent as to the agencies provided by defendant for the exercise of this very essential function, we must look to the facts in the particular instance unenlightened by information concerning its usual course of business in such transactions. The seal to which so much importance is attached by defendant is not controlling, because its use was not necessary to constitute the instrument the obligation of defendant. *Crowley v. Genesee Mining Co.*, 55 Cal. 273. Nor does defendant plead that the seal was attached after the instrument was delivered, but "after the signing of said note," a proper time for such an act. Mr. Doyle the secretary, did testify that he did not stamp the corporate seal on the paper, and that he does not know how, when or where such impression was made, but there is absolutely no proof that the payee is responsible for what was done in this regard; nor does it appear that the vice-president or some director of defendant did not perform that act. The board of directors had authorized the execution of the note, and in August following, after they had discovered Disney's fraud, a meeting was held in Mr. Doyle's office, and a lengthy resolution adopted, wherein it was determined to repudiate the note in suit, not because it was executed without authority, but for the reason that defendant had never received any consideration therefor. *Prima facie* at least the note was the obligation of the corporation. *Reeve v. First Nat. Bank*, 54 N. J.

Law, 208, 33 Am. St. Rep. 675; *Merchants Nat. Bank v. Citizens Gas Light Co.*, 159 Mass. 505, 38 Am. St. Rep. 453; Joyce, Defenses to Commercial Paper, sec. 80.

3. Defendant urges that plaintiff is not a *bona fide* holder of the note sued on. The wife of the payee was related to several of the stockholders and some of the officers of plaintiff. She had a separate estate which she managed, and was indebted to plaintiff on her promissory note for $5,500. She indorsed the note in suit and delivered it to plaintiff and received a credit of $1,000 on her obligation to the bank. The cashier, with whom, so far as the record discloses, she dealt exclusively concerning this transaction, testified positively that he did not know that L. M. Disney was interested in, or an officer of, defendant; that he did not know of any defense to the note and took it for the bank in good faith; that he was told that the note had been made for salary or commission. The credit on Mrs. Disney's obligation was the payment of a valuable consideration by plaintiff. *Martin v. Johnston*, 34 Neb. 797; *Jones v. Wiesen*, 50 Neb. 243; *Smith v. Thompson*, 67 Neb. 527. There is nothing in the record to contradict or render improbable this testimony, and plaintiff was entitled to the instruction given by the court. *Stedman v. Rochester Loan & Banking Co.*, 42 Neb. 641.

The judgment of the district court is therefore

AFFIRMED.